# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES I. McCABE,  :  CIVIL NO. 1:CV-12-00293
                  :
    Plaintiff      :  (Judge Rambo)
                  :
    v.            :  **FILED**
                  :  HARRISBURG, PA
PENNSYLVANIA DEPARTMENT  :
OF CORRECTIONS, et al.,  :  DEC 0 5 2012
                  :
    Defendants    :  MARY E. D'ANDREA, CLERK
                  :  Per _____
                       Deputy Clerk

## M E M O R A N D U M

Plaintiff James I. McCabe, an inmate currently confined at the State

Correctional Institution at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania,

initiated this civil rights action on February 14, 2012, by filing a complaint (Doc. 1)

pursuant to 42 U.S.C. § 1983, followed by an amended complaint filed on May 16,

2012 (Doc. 23). Named as Defendants are a number of medical and administrative

officials at SCI-Mahanoy.[1] In the amended complaint, Plaintiff alleges that these

officials were deliberately indifferent to his serious medical needs related to a

reducible hernia. He also alleges that a Department of Corrections' ("DOC") policy

---

[1] Named as Defendants are the Pennsylvania Department of Corrections ("DOC"); John Wetzel; Corrections Health Care Administrator; Bureau of Health Care Services; Dorina Varner; John Kerestes; Scott W. Miller; Marva Cerullo; Alice Chipriano; John Steinhart; and Tony Andreuzzi. In his motion to dismiss, Defendant Andreuzzi declares that he has been improperly identified as Tony Andreuzzi, where, in fact, the court should assume that Plaintiff intended to sue Tony Ianuzzi since Mr. Ianuzzi is the physician's assistant who examined and treated Plaintiff. (*See* Doc. 34.) For purposes of discussion herein, the court will refer to this Defendant as Tony Ianuzzi.

regarding the Medical Services Program, which requires an inmate to sign an authorization form (also known as a "cash slip") before receiving non-emergency medical services, violated his civil rights. Plaintiff seeks declaratory and compensatory relief.

Before the court are two motions to dismiss the amended complaint, filed by two sets of Defendants. The first motion to dismiss was filed by Defendant Tony Ianuzzi on July 17, 2012. (Doc. 33.) The second motion to dismiss was filed by the remaining Defendants ("Commonwealth Defendants") on August 2, 2012. (Doc. 37.) For the reasons set forth below, both motions to dismiss will be granted.

## I.  **Background**

In the amended complaint, Plaintiff provides the following factual background with respect to his claims, which the court will accept as true and view in a light most favorable to Plaintiff for purposes of disposition of the instant motions to dismiss.

### A.  **Facts**

On March 14, 2011, Plaintiff noticed a small bulge under his skin in the area of his lower right abdomen (Doc. 23 ¶ 16.), which prompted him to submit a sick-call slip to the medical department that day. (*Id.* ¶ 17.) On March 16, 2011, Plaintiff was examined by Defendant Ianuzzi, a nurse practitioner. (*Id.* ¶ 18.) As a result of the

examination, Defendant Ianuzzi diagnosed Plaintiff with a reducible right inguinal hernia. (*Id.* ¶ 19.) He explained to Plaintiff that because the hernia is reducible, "it does not meet the requirement for surgery." (*Id.* ¶ 21.) When Plaintiff asked why his reducible hernia did not require surgery,[2] Defendant Ianuzzi responded, "The hernia will have to become strangulated, blocked, ruptured or you will have to be experiencing excruciating pain before surgery will be done." (*Id.* ¶¶ 24-25.) Defendant Ianuzzi then placed Plaintiff on medical restrictions and prescribed stool softeners and fiber to prevent straining while using the bathroom. (*Id.* ¶ 26.)

After doing independent research on hernias that raised his concerns about his prescribed treatment, Plaintiff submitted a request slip on April 25, 2011, to Defendant Steinhart, a registered nurse ("RN") in SCI-Mahanoy's medical department, in which he expressed his concerns about his condition and the treatment he had received therefor. (*Id.* ¶¶ 27-30.) Defendant Steinhart responded on April 26, 2011, explaining, "If the hernia is [reducible,] a hernia belt, stool softener, and fiber supplements are [used] to prevent problems." (*Id.* ¶ 31.)

On May 22, 2011, Plaintiff submitted a request slip to Defendant Cerullo, the supervisor of SCI-Mahanoy's medical department, again expressing his concerns with

---

[2] Plaintiff avers that Defendant Ianuzzi also told him that "the only way to repair a hernia is with surgery." (Doc. 23 ¶ 23.)

his condition and treatment he had received from the medical department. (*Id.* ¶ 32.) Defendant Cerullo responded on May 23, 2011, upholding Defendant Steinhart's decision with respect to the course of treatment. (*Id.* ¶ 33.)

On June 8, 2011, Plaintiff filed a grievance with Defendant Miller, SCI-Mahanoy's grievance coordinator, addressing the seriousness of his hernia, his future health and safety, and the actions of those prison officials who previously addressed his concerns. (*Id.* ¶ 34.) Defendant Chipriano, a RN in the medical department, denied the grievance on June 15, 2011, stating, "Hernia repairs are elective procedures and are not done unless there is a significant medical reason to do surgery." (*Id.* ¶ 35; Doc. 23 at 26, Ex. F, Initial Review Response.) Plaintiff filed an appeal on June 22, 2011, seeking a hernia repair. ( Doc. 23 ¶ 36.) That appeal was denied by Defendant Miller on June 27, 2011. (*Id.* ¶ 37.) Plaintiff appealed for final review with the DOC Secretary's Office of Inmate Grievances and Appeals on July 19, 2011. (*Id.* ¶ 38.) In that appeal, Plaintiff explained that: (1) the treatment used for his hernia is only a temporary measure; (2) hernias can only be repaired with surgery; and (3) defining a hernia repair surgery as "elective" should not provide the basis for not operating on his hernia. (*Id.*) Plaintiff received a response on August 26, 2011, informing him that a final review decision would be delayed pending a review of his medical file by the DOC's Bureau of Health Care Services. (*Id.* ¶ 39.)

On or about September 12, 2011, Plaintiff went to the pill line to have his prescriptions filled, but was told that he would have to submit a sick-call slip for refills because his prescriptions had run out. (*Id.* ¶ 40.) Plaintiff submitted a sick-call slip that same day. (*Id.*)

Plaintiff attended sick-call the next day, September 13, 2011, and informed Defendant Ianuzzi what he had been told at the pill line the previous day. (*Id.* ¶ 41.) Defendant Ianuzzi asked Plaintiff to sign a blank "cash slip," which is a form used by the DOC to authorize the withdrawal of funds from an inmate's account for non-emergency medical service. (*Id.* ¶ 42.) When Plaintiff asked why he would need to sign the cash slip, Defendant Ianuzzi told him that "unless it is a chronic or life-threatening illness, [Plaintiff has] to sign it." (*Id.* ¶¶ 43-44.) Plaintiff countered that Defendant Ianuzzi had previously informed him that his hernia was a chronic illness and that he had not been required to sign a cash slip at any prior point while under Defendant Ianuzzi's care. (*Id.* ¶ 45.) Defendant Ianuzzi reiterated that a cash slip was needed for prescriptions to treat all illnesses other than those that are life-threatening. (*Id.* ¶ 46.) Plaintiff responded that Defendant Ianuzzi had not previously charged him for prescriptions for treatment of chronic illnesses. (*Id.* ¶ 47.) While he was having this conversation with Defendant Ianuzzi, Plaintiff noticed that his medical file held by Defendant Ianuzzi was marked with red ink. (*Id.* ¶ 48.) Further,

when Plaintiff told Defendant Ianuzzi that he refused to sign the cash slip, but was not refusing medical treatment, Defendant Ianuzzi responded, "No cash slip, no treatment." (*Id.* ¶ 51.) Plaintiff contends that he was subjected to retaliation for his filing of grievances, which is evidenced by Defendant Ianuzzi's change in position regarding the necessity of submitting a cash slip for prescriptions and the red ink on his medical file. (*Id.* ¶ 50.)

On September 19, 2011, Plaintiff submitted a request slip to Defendant Steinhart, informing him of the situation with the cash slip and requesting prescriptions. (*Id.* ¶ 52.) According to Plaintiff, Defendant Steinhart responded as follows:

> "Before you can be evaluated at a nurse triage/sick call/dental sick call, you need to sign the cash slip (next couple words unknown) and the practitioner will decide after you are seen whether it is chargeable or not and inform you. If you don't sign the cash slip, you cannot be seen or treated unless it is a life-threatening emergency."

(*Id.* ¶ 53; Doc. 23 at 32, Ex. K, Inmate Request to Staff Member.)

On September 20, 2011, Plaintiff submitted a request slip to the medical department requesting placement on the call-out list for prescription renewal. (Doc. 23 ¶ 54.) He did not receive a response to this request slip. (*Id.*)

On October 8, 2011, the DOC Secretary's Office of Inmate Grievances and Appeals denied Plaintiff's appeal for final review, setting forth the following finding:

6

The Bureau of Health Care Services reviewed your medical file and determined that the medical care given by the medical department of SCI Mahanoy to you has been reasonable and appropriate. You have a reducible inguinal hernia and you are, therefore, not a surgical candidate at this time. No evidence of neglect or deliberate indifference has been found. Your grievance appeal to this office is denied.

(*Id.* ¶ 55; Doc. 23 at 34, Ex. M, Final Appeal Decision.)

In November, 2011, Plaintiff received a physical examination at the medical department. (*Id.* ¶ 56.) He explained to the staff member that his prescriptions had been discontinued, but he had a hernia and chronic knee and back pain. (*Id.*) The staff member did not examine Plaintiff's hernia, and stated to him, "It's good your [sic] not on a bunch of prescriptions. They aren't good for you." (*Id.* ¶ 57.)

On December 11, 2011, Plaintiff submitted another request slip to the medical department, inquiring about his September 20, 2011 request slip that went unanswered. (*Id.* ¶ 59.) Plaintiff never received a response to the December 11, 2011 request slip. (*Id.*)

Since that time, Plaintiff alleges that his hernia has grown in size and believes that he has developed another hernia on his left side. (*Id.* ¶ 60.) He alleges that he is in a "substantial amount of pain," but the medical department is ignoring his request slips and "totally denying him medical attention altogether for non-medical reasons." (*Id.*)

## B.    Procedural History

Plaintiff initially filed a complaint on February 14, 2012. (Doc. 1.) By order dated February 29, 2012, the court directed service of the complaint on the Defendants named therein. (Doc. 9.) Before Defendants answered the complaint, Plaintiff filed a motion to amend the complaint, along with a proposed amended complaint. (Docs. 14 & 15.) On April 16, 2012, the court granted the motion to amend the complaint, but directed Plaintiff to file an amended complaint that comports with the Federal Rules of Civil Procedure. (Doc. 17.) Plaintiff filed his amended complaint on May 16, 2012. (Doc. 23.) The court directed service of the amended complaint on the Defendants named herein on May 17, 2012. (Doc. 25.)

On July 17, 2012, Defendant Ianuzzi filed a motion to dismiss the amended complaint (Doc. 33), to which Plaintiff responded on August 1, 2012 (Doc. 36). Defendant Ianuzzi filed a reply brief on August 7, 2012. (Doc. 40.) On August 2, 2012, the Commonwealth Defendants filed a motion to dismiss the amended complaint (Doc. 37.), to which Plaintiff responded on September 5, 2012 (Doc. 44). The Commonwealth Defendants did not file a reply. Although he was not given leave to file a sur reply, Plaintiff filed additional briefs on August 27, 2012 (Doc. 43) (effectively a sur-reply to Defendant Ianuzzi's motion to dismiss) and October 17,

8

2012 (Doc. 47) (pertaining to the Commonwealth Defendant's motion to dismiss). The time for briefing has expired, and therefore, the matter is ripe for disposition.

## II.   <u>Standard of Review</u>

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation"); *accord, e.g., Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). Further, when a complaint contains well-pleaded factual allegations, "a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for

11

summary judgment." (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. **Discussion**

In order to state a viable § 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the alleged conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a close causal connection to the plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id.*

---

[3] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

## A.    Medical Care for Reducible Hernia

In their motions to dismiss, both sets of Defendants[4] contend that Plaintiff has failed to allege facts in support of his allegation that they were deliberately indifferent to his serious medical needs.  To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).  The Third Circuit Court of Appeals has found deliberate indifference when a prison official knows of a prisoner's need for medical treatment but intentionally

_____

[4]   In their motion to dismiss, the Commonwealth Defendants argue that the amended complaint should be dismissed on the following grounds: (1) Plaintiff's claims against the DOC are barred by the Eleventh Amendment; (2) Plaintiff has failed to allege personal involvement in the alleged wrongs on the part of Defendant Wetzel; and (3) Plaintiff has failed to establish that the Commonwealth Defendants were deliberately indifferent to his serious medical needs.  Because the court concludes that Plaintiff has failed to establish any claim related to treatment of his reducible hernia, it need not discuss the first two arguments set forth in the Commonwealth Defendants' motion to dismiss.

refuses to provide it, delays necessary treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

This approach "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*,

15

182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. *Durmer*, 991 F.2d at 69. However, if non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. *Spruill*, 372 F.3d at 236.

In the instant case, the allegations in Plaintiff's amended complaint, as well as the documentation submitted in support thereof, clearly demonstrate that, prior to Plaintiff's refusal to sign the cash slip on September 13, 2011, he had received medical attention for his reducible hernia, as well as prescriptions to ease his discomfort. The attention Plaintiff received lacks the requisite deliberate indifference to support an Eighth Amendment claim. *See Brown v. Beard*, 453 F. App'x 453, 455 (3d Cir. 2011) (disagreements regarding how to treat reducible hernia does not establish an Eighth Amendment violation); *Rodriguez v. Sec'y of the Commonwealth*,

441 F. App'x 919, 923-24 (3d Cir. 2011) (no finding of deliberate indifference where plaintiff was treated for his hernia by medical staff, but not in the manner the prisoner would have preferred); *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 675 (3d Cir. 2011) (same). Plaintiff alleges in his amended complaint that he was seen by medical personnel and treated with medication. Unfortunately, despite the medical attention, Plaintiff continued to suffer from discomfort. This is clearly a case where Plaintiff had been given medical attention but was dissatisfied with the course of treatment and subsequent results. As stated above, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Thus, Plaintiff has failed to establish an Eighth Amendment violation with respect to his pre-September 13, 2011 treatment.

Plaintiff again fails to state a claim of deliberate indifference arising out of his allegation that Defendant Ianuzzi would not treat his hernia after Plaintiff refused to sign the cash slip and authorize the withdrawal of funds for medical service. It is well established that allegations of a defendant's consideration of costs associated with treating a prisoner-plaintiff's non-emergency medical condition does not state a claim of deliberate indifference, as prisoners "do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674 (citing *Reynolds v Wagner*, 128 F.3d 166,

17

175 (3d Cir. 1997)) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *Caines v. Hendricks*, No. 05-1701, 2007 WL 496876, at *8 (D.N.J. Feb. 9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary."); *see also Brown v. Beard*, 445 F. App'x at 456 (citing *Reynolds*, 128 F.3d at 175) ("prisoners do not have a constitutional right to limitless medical care"). In accordance with this well-settled case law, Plaintiff has failed to establish an Eighth Amendment violation with respect to his claim that Defendants were deliberately indifferent when they required Plaintiff to authorize the withdrawal of funds for treatment of his non-emergency medical care.

## B.    Policy Requiring Co-Payment

Moreover, Plaintiff has failed to state a cognizable claim to the extent that he challenges the constitutionality of the DOC policy which required him to pay a "co-payment" for a condition considered non-chronic and non-emergency.[5] In support of

---

[5] The Commonwealth Defendants did not specifically address the constitutionality of the policy requiring a co-payment for non-emergency or non-chronic medical care in their motion to dismiss. Nevertheless, as Plaintiff's complaint arises out of "prison conditions," the screening provisions of the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e, apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted *in forma pauperis* status to pursue this suit. (*See* Doc. 9.) Under the PLRA's screening provisions, the court's

18

his claim, Plaintiff asserts that Defendants delayed his medical treatment for a non-medical reason by requiring him to authorize the deduction of funds from his inmate account for medical expenses. A fair reading of Plaintiff's amended complaint demonstrates he reasons that such a policy violates his due process rights, and that the effect of the policy was improper as applied to him, because his medical needs should have been classified as chronic and thus exempt from payment.

To establish a due process violation under the Fourteenth Amendment, a plaintiff must demonstrate that the defendants deprived him of either a property or liberty interest. *Daniels v. Williams*, 474 U.S. 327, 339 (1986). Property rights are basic civil rights and a deprivation of property without due process gives rise to a claim under section 1983. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 553 (1972). Inmates have a protected property interest in the funds in their prison accounts. *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997). Accordingly, "inmates are entitled to due process with respect to any deprivation of money [from their accounts]." *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002) (citations omitted).

---

obligation to dismiss a complaint that fails to state a claim is not excused even after defendants have filed a motion to dismiss. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is ground warranting dismissal which was not relied upon by defendant in its motion, the court may nonetheless *sua sponte* raise the issue and rest its dismissal upon a ground set forth in the PLRA. *See id.; Dare v. United States*, Civ. No. 06-115E, 2007 WL 1811198, *4 (W.D. Pa. June 21, 2007), *aff'd*, 264 F. App'x 183 (3d Cir. 2008). Such a case is present here.

In *Reynolds*, the Third Circuit Court of Appeals held that charging prisoners in a county prison with small co-payments for medical treatment is not prohibited by the Constitution, so long as they are provided with care even when they could not afford to pay the fees. *Reynolds*, 128 F.3d at 174. In *Reynolds*, the plaintiff's inmate handbook explained certain exceptions to the medical co-pay requirement, and permitted an inmate who disagreed with a fee assessment to file a grievance on the matter. *Id.* In finding no violation of the Due Process Clause, the *Reynolds* Court noted: "[T]his is not a situation in which the inmates are deprived of the benefits of their property and receive nothing in return; rather in exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed." *Id.* at 180. Thus, the court concluded that a policy requiring pre-treatment co-payments from an inmate's prison account for medical treatment of non-chronic, non-emergency ailments does not violate an inmate's due process rights.

A nearly identical DOC policy as the one held constitutional in *Reynolds* is implicated here. It is clear from the amended complaint that Plaintiff had sufficient prior notice of the policy related to deduction of funds for medical service. (*See* Doc. 23 ¶ 63.) In fact, Plaintiff attaches the policy, DC-ADM 820, as an exhibit to his amended complaint. (Doc. 23, Ex. P, DC-ADM 820, "Co-Payment for Medical Services Procedures Manual.) He was also aware that the medical department did not

classify his reducible hernia as chronic or life-threatening. (Doc. 23 ¶ 44.) Although

he adamantly contends that his reducible hernia should have been considered a

chronic condition and thus exempt from a co-payment,[6] a mere disagreement in

judgment between Plaintiff and professional health care providers does not, without

more, establish a fourteenth amendment due process rights violation. Unfortunately

for Plaintiff, regardless of how strongly he argues that his reducible hernia is a

chronic condition, not only is his argument subjective and conclusory (and thus not

entitled to the assumption of truth for purposes of a motion to dismiss), but a

reducible hernia is not a condition that appears in any way equal to those conditions

defined as chronic for purposes of the DC-ADM 820.[7] Thus, Plaintiff's argument,

that the DOC policy requiring him to provide a co-payment from his inmate account

---

[6] Plaintiff's amended complaint does not provide any indication that Plaintiff cannot afford the fee for medical treatment; rather he simply asserts that he refused to sign the cash slip based on his subjective belief that his hernia was a chronic or life-threatening condition. (Doc. 23 ¶¶ 67-69.)

[7] Under DC-ADM 820, "Chronic Medical Disease/Illness" is defined as follows:

A disease or illness that is deemed "chronic" by the medical provider, based on the professional opinion that the inmate's condition will require regular return and/or continuous visits for medical services. The following diagnoses provide several examples of diseases/illnesses that may (or may not) be defined as "chronic," depending on the individual inmate's specific diagnosis and medical condition: Asthma, Congestive Heart Failure, Coronary Artery Disease, Diabetes, Dislipidemia, Hepatitis C, HIV, and Hypertension.

DC-ADM 802.

for treatment of his medical condition is an unconstitutional imposition upon his due process rights, is without merit.

In sum, because the amended complaint pleads only that Plaintiff was subjectively dissatisfied with his medical treatment and that Defendants considered the cost in providing his care, Plaintiff has failed to establish an Eighth Amendment violation or a Fourteenth Amendment violation based on the treatment for his reducible hernia. Further, since Plaintiff has failed to state a constitutional violation, amendment would be futile. *See Fletcher-Harlee Corp.*, 482 F.3d at 252.

## IV. **Conclusion**

For the reasons set forth herein, both motions to dismiss will be granted. In addition, Plaintiff will not be permitted to file an amended complaint. An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated: December 5, 2012.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES I. McCABE, | : | CIVIL NO. 1:CV-12-00293 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The motions to dismiss (Docs. 33 & 37) is **GRANTED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) Any appeal from this order is **DEEMED** frivolous and not taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

_____
SYLVIA H. RAMBO
United States District Judge

Dated: December 5, 2012.